IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
 : CASE NO.  1:10 CV 00724
THE LINCOLN ELECTRIC COMPANY, :
 :
                              Plaintiff, : MEMORANDUM OF OPINION AND
 : ORDER
            -vs- :
 :
 :
MICHAEL P. MANAHAN, SR., et al, :
 :
                              Defendants.
------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Before the Court are two motions to dismiss. The first, filed by defendants Michael P. Manahan, Sr., and MP Machinery & Testing, LLC, rests on various grounds, including lack of standing, lack of personal jurisdiction, failure to state a claim upon which relief can be granted, and improper venue. (Doc. 10). Alternatively, these defendants motion to transfer this matter to the Middle District of Pennsylvania. (Doc. 11). Defendants Joseph Green, Esq., and his employer Lee, Green, and Reiter, Inc., filed the other motion to dismiss and argue for dismissal on similar grounds. (Doc. 8).

This matter is fully briefed and ready for the Court's consideration. Although the parties present a host of issues, this matter may be resolved on one alone. As explained in more detail below, the plaintiff lacks standing to bring suit in this instance, where it is alleged that the defendants carried out and received the benefit of a number of fraudulent conveyances from an entity presently in bankruptcy. The plaintiff does not allege an injury that is peculiar and personal to it, but instead alleges injury that is shared by the debtor's estate and all creditors. As a consequence, the plaintiff lacks standing to bring its various claims, which belong to the bankruptcy estate. The Court will grant the defendants' motions to dismiss.

**I. Background**

The present dispute arises from another lawsuit filed by the plaintiff The Lincoln Electric Company ("Lincoln Electric") against MPM Technologies, Inc., ("MPM") which is not a party in this instance. See The Lincoln Electric Company v. MPM Technologies, Inc., 1:08-CV-2853 (N.D. Ohio).  That case went to trial, and a jury found in favor of Lincoln Electric, awarding it $284,600.00. (Compl. ¶12). Judgment was entered on 16 September 2009. (Compl. ¶12). Before Lincoln Electric could collect, however, MPM filed for bankruptcy on 17 December 2009. (Compl. ¶25).

With MPM's bankruptcy filing, the automatic stay was imposed, shielding the property of the bankruptcy estate from MPM's creditors. See 11 U.S.C. §§ 362, 541. All legal or equitable interests that MPM may have had in property as of the commencement of the case became a part of the estate. See 11 U.S.C. § 541(a)(1).

2

But, this did not dissuade Lincoln Electric from pursuing satisfaction of its judgment. Rather than suing MPM directly, an option clearly foreclosed by its bankruptcy, Lincoln Electric filed the present lawsuit against third-party non-debtors, which it maintains participated in, and/or received the proceeds of, a fraudulent transfer of MPM's assets. Lincoln Electric now seeks its $284,600.00 judgment, interest, attorney's fees, and punitive damages. (Compl. ¶¶36, 41).

Lincoln Electric names as defendants Michael P. Manahan, Sr., MPM's president and sole shareholder; Joseph Green, Esq., the attorney who represented MPM throughout the first lawsuit; Lee, Green, & Reiter, Inc., the Pennsylvania law firm that employs Mr. Green; and MP Machinery & Testing, an entity formed after entry of judgment, which Lincoln Electric contends is the successor to MPM's liabilities. (Compl. ¶¶2-5). Lincoln Electric also sues three unknown entities, designated as "XYZ Companies" and three John or Jane Does, which it contends may be liable for the conduct of which it complains. (Compl. ¶6).

According to the complaint, a number of things happened between entry of judgment and MPM's bankruptcy filing. First, Lincoln Electric registered the judgment in the Middle District of Pennsylvania, where MPM maintained its business. (Compl. ¶14). Lincoln Electric began making arrangements for a debtor's exam of MPM, in an effort to locate its assets.  (Compl. ¶16). MPM allegedly stalled on scheduling the debtor's exam, apparently in an effort to prevent collection, but the parties eventually agreed to 18 December 2009. (Compl. ¶16). The day before the exam was to take place, however, MPM cancelled it and filed for bankruptcy, closing its doors. (Compl. ¶25).

MPM allegedly made other efforts to prevent collection prior to its bankruptcy filing. On 24 September 2009, MPM through its attorney Mr. Green filed a motion with the court to stay execution of the judgment. (Compl. ¶15). In its brief, MPM represented that it anticipated filing an appeal and that it would obtain a supercedeas bond. (Compl. ¶15). The motion was granted on the condition that MPM posted bond, but MPM never did so, nor did it appeal. (Compl. ¶15). Lincoln Electric contends that MPM never had any intention of posting bond and that the motion was an effort to buy it time to disburse MPM's assets.(Compl. ¶15).

Lincoln Electric further states that on 25 September 2009, the day after MPM filed its motion to stay execution, defendant Mr. Manahan formed defendant MP Machinery & Testing with the assistance of defendant Attorney Green. (Compl. ¶17). As is the case with the debtor MPM, Mr. Manahan is the president, sole shareholder, and landlord of MP Machinery and Testing. (Compl. ¶¶10,18). MP Machinery & Testing produces test machines, as did MPM. (Compl. ¶19). It is located at the same address, uses the same telephone number, leases the same equipment, works on the same projects, and employs the same people. (Compl. ¶20). In addition, Mr. Manahan transferred MPM's incomplete projects to MP Machinery & Testing through a subcontract, for which MPM received insufficient consideration. (Compl. ¶21). The transfer was designed to prevent Lincoln Electric from recovering its judgment from the proceeds when those projects were completed. (Compl. ¶21).

Lincoln Electric states that Mr. Manahan owns both the building in which MPM operated and the equipment that it used. (Compl. ¶11). MPM leased both from Mr. Manahan for $245,000.00 per year. (Compl. ¶11). In October 2009, Mr. Manahan filed

4

two UCC security interests naming himself as MPM's creditor for $368,000.00 in back rent and an additional $68,767.90. (Compl. ¶22). Mr. Manahan also sought $10,438.80 for a loan he extended to MPM in December 2009. (Compl. ¶23). Lincoln Electric claims that Mr. Manahan issued himself a $60,000 bonus out of MPM's coffers on 11 December 2009. (Compl. ¶24). According to Lincoln Electric, Mr. Manahan claims MPM owes him a total of $447,206.70. (Compl. ¶23).

MPM filed for bankruptcy on 17 December 2009. (Compl. ¶25). The only creditors listed in the petition are Lincoln Electric and Mr. Manahan. (Compl. ¶26). Mr. Manahan filed a proof of claim for an amount totaling $415,524.00. (Doc. 14-1, p. 33). On 11 May 2010, the bankruptcy trustee filed objections to Mr. Manahan's proof of claim and sought to recover preferential payments and fraudulent transfers. (Doc. 14-1, pp.1-9).

Lincoln Electric filed its three count complaint with this Court on 7 April 2010. In count one, Lincoln Electric alleges that pursuant to the Ohio Uniform Fraudulent Transfer Act, Ohio Rev. Code. Ann. § 1336.04, Mr. Manahan fraudulently transferred assets, including but not limited to cash assets and business contracts, to himself and MP Machinery & Testing with the actual intent to hinder, delay, and/or defraud Lincoln Electric. (Compl. ¶31). Lincoln Electric states that pursuant to Ohio Rev. Code Ann. § 1336.05, when Mr. Manahan fraudulently transferred assets, he did not receive a reasonably equivalent value in exchange, and MPM became insolvent as a result. (Compl. ¶34). Lincoln Electric states that because Mr. Manahan is one and the same as MPM and MP Machinery & Testing, the corporate veil should be pierced and Mr. Manahan should be held personally liable for the transfer of assets. (Compl. ¶35).

5

Lincoln Electric maintains that as a result of the defendants' actions, it suffered damages including, but not limited to, "an inability to collect the $284,600.00 judgment plus interest from MPM, as well as related attorneys' fees incurred in the prosecution of this matter." (Compl. ¶36).

In count two, Lincoln Electric alleges that MP Machinery & Testing is a successor in interest to and liable for the debts of MPM. (Compl. ¶38).

Count three is a civil conspiracy claim. Lincoln Electric contends that the defendants Mr. Manahan, MP Machinery & Testing, and Mr. Green maliciously combined to injure Lincoln Electric in a way not competent for any one alone, when they engaged or assisted in the fraudulent transfer of assets described above. (Compl. ¶40). Lincoln Electric maintains that the defendants acted with the intent to place otherwise available assets out of Lincoln Electric's reach. Lincoln Electric states that as a result it was damaged because it cannot collect its judgment. (Compl. ¶41).

Mr. Manahan and MP Machinery & Testing have filed a motion to dismiss on the following grounds: lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue. They also maintain that Lincoln Electric's civil conspiracy allegation does not state a claim upon which relief can be granted. Mr. Green and his employer filed their own motion to dismiss on the same grounds, excepting the venue challenge. Mr. Manahan and MP Machinery & Testing also filed a motion to transfer the case to the Middle District of Pennsylvania.

## II. Discussion

After reviewing defendants' various arguments for dismissal and the plaintiff's counter-arguments, the Court concludes that this matter cannot proceed because Lincoln Electric does not have standing. Lincoln Electric's claims belong to the bankruptcy estate, because the injury alleged in this instance is common to the debtor MPM and its creditors. As explained below, Lincoln Electric has not advanced claims that are personal to it, and, as a result, lacks standing.

When a bankruptcy petition is filed, a bankruptcy estate is created. The estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Courts broadly construe the phrase "all legal or equitable interests of the debtor in property" to include "rights of action," such as claims based on state or federal law. See Bauer v. Commerce Union Bank, 859 F.2d 438, 441 (6th Cir.1988); Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.), 714 F.2d 1266, 1274 (5th Cir. 1983).

The bankruptcy trustee's role is to manage the estate and gather up all available property, including causes of action, for an eventual pro rata, monetary distribution among the debtor's creditors. In addition to representing the rights of the debtor, the trustee represents the interests of the debtor's creditors. Under the "strong-arm" provision of the bankruptcy code, the trustee may step into the shoes of a creditor for the purpose of bringing a cause of action under a state fraudulent conveyance statute. NLRB v. Martin Arsham Sewing Co., 873 F.2d 884, 887 (6th Cir.1989). "The trustee's single effort eliminates the many wasteful and competitive suits of individual creditors." Koch Ref. v. Farmers Union Cent. Exch., Inc., 831 F.2d 1339, 1342-43 (7th Cir.1987).

The trustee has the exclusive right to assert the claims belonging to the estate. Schertz-Cibolo-Universal City, Indep. Sch. Dist. v. Wright ( In re Educators Group Health Trust ), 25 F.3d 1281, 1284 (5th Cir.1994). However, the bankruptcy trustee has no standing to bring claims that are personal to an individual creditor, since these claims do not belong to the estate. In re E.F. Hutton Southwest Properties II, Ltd., 103 B.R. 808, 812 (Bankr.N.D.Tex.1989). A personal claim is one in which the claimant has been harmed and "no other claimant or creditor has an interest in the cause." Koch Refining, 831 F.2d at 1348. To determine whether a cause of action belongs to the estate or an individual creditor, the court must "look to the injury for which relief is sought and consider whether it is peculiar and personal to the claimant or general and common to the corporation and creditors." Id. at 1349. "In the final analysis, whether a right of action exists in the trustee depends on whether the action vests in the trustee as an assignee for the benefit of creditors or, on the other hand, accrues to specific creditors. The latter is the case if the action is not in a fair sense an asset of the bankrupt which passes to the trustee." Cissell v. American Home Assur. Co., 521 F.2d 790 (6th Cir.1975) (citing In re Associated Oil Co., 289 F. 693 (6th Cir. 1923)).

In the present case, Lincoln Electric alleges four claims under state law: fraudulent transfer; alter ego liability; successor liability; and civil conspiracy. All are rooted in the allegation that Mr. Manahan, with the assistance of Mr. Green, stripped MPM of its cash assets and business contracts and transferred them to himself and MP Machinery & Testing, which resulted in MPM's insolvency, bankruptcy, and, ultimately, an inability to settle its judgment with Lincoln Electric.  In this Court's view, the injury that Lincoln Electric describes is not one specific to it, but rather, it is a generalized injury to

8

MPM and all of its creditors.  Although Lincoln has pleaded several theories of recovery, the injury is always the same: Lincoln Electric has been deprived of its $284,600 judgment. This harm is an indirect consequence of the defendants' alleged actions. It is MPM that sustained direct injury. And indeed, the bankruptcy trustee has filed an action on behalf of MPM's estate against Mr. Manahan and MP Machinery & Testing seeking to avoid the fraudulent transfers of which Lincoln Electric complains. To allow this case to proceed would have the effect of placing Lincoln Electric at the front of the line, a result that would run counter to the basic principles of bankruptcy.

A number of federal courts, faced with similar facts, have concluded that once bankruptcy has been filed a creditor loses standing to bring either a fraudulent transfer or alter ego action against a third party non-debtor. For instance, the Fifth Circuit rejected the attempt of a single creditor to recover from a non-debtor who controlled the debtor corporation under a fraudulent transfer theory. See In re MortgageAmerica Corp., 714 F.2d 1266, 1275-76 (5th Cir.1983). The court reasoned that recovery based on a fraudulent transfer is premised on the idea the debtor retains an equitable interest in the fraudulently transferred property. Id. at 1275. As such, because the transferred property belongs to the bankruptcy estate, the trustee, and not the creditor, is the proper party to bring suit. Id.; See also N.L.R.B. v. Martin Arsham Sewing Co., 873 F.2d 884, 887 (6th Cir.1989) (property fraudulently conveyed and recoverable under Bankruptcy Code provisions remains property of the estate and, if recovered, should be subject to equitable distribution under the Code"); In re Central Heating & Air Conditioning, Inc., 64 B.R. 733 (N.D.Ohio 1986) (collateral action against third parties by creditor seeking to

secure its obligation by attacking fraudulent conveyances is subject to Bankruptcy Code's automatic stay provision).

The Seventh Circuit rejected creditors' attempts to hold liable member owners of a debtor corporation as the corporation's alter egos, on the ground that the creditors lacked standing. Koch Refining v. Farmers Union Central Exchange, Inc., 831 F.2d 1339 (7th Cir.1987). The Court considered the nature of the alter ego claim in light of the purpose and scope of Section 541 of the bankruptcy code, and concluded that only the trustee could advance the claim. Id. at 1340-43. In reaching this conclusion, the court recognized the broad sweep of Section 541:

> Courts have regularly applied section 541 broadly to include property fraudulently or improperly transferred by the debtor before bankruptcy. Creditors' fraud claims brought under the Racketeer Influenced and Corrupt Organizations Act (RICO) have been found to be section 541 property assertable only by the trustee. And a creditor's action for fraudulent creation of a new entity for debt avoidance purposes has been properly asserted by the bankruptcy trustee.

Id. at 1343 (citations omitted).

In the present case, Lincoln Electric acknowledges the exclusive right of the trustee to assert claims belonging to the estate but argues, without merit, that its claims are personal, and relies on the Seventh Circuit case, In re Teknek, LLC, 563 F.3d 639 (7th Cir.2009). In one respect, that case is similar to the present case, in that it involved a judgment creditor who sued the fiduciaries of a corporate debtor under an alter ego theory. Id. But, critically, unlike the present case, the fiduciaries in Teknek had committed an independent injury to a non-debtor entity that was jointly and severally liable for the plaintiff's judgment. Id. at 649. Thus, because the creditor's claim against the fiduciaries did not depend on their misconduct with respect to the debtor, the court

10

held that the creditor had asserted a personal claim that did not belong to bankruptcy estate. Id. Because the facts of this case do not resemble the unique facts of Teknek, it is unpersuasive in this instance.

Lincoln Electric also contends that its civil conspiracy claim against Mr.Green and his firm should proceed as a personal claim outside of bankruptcy proceedings. Lincoln Electric argues that this claim is personal because it is premised on Mr. Green's use of legal procedure to assist his client with the fraudulent transfers. Lincoln Electric says that because the bankruptcy trustee has not pursued a claim against Mr. Green and the firm, it is free to do so. It further notes that any recovery on this claim would come from a pool of money separate and distinct from the pool of money at issue in MPM's bankruptcy.

The Court rejects these arguments as well. First, Lincoln Electric's separate "pool of money" theory, which it derives from Teknek, is not determinative of whether the civil conspiracy claim against Mr. Green is personal to Lincoln Electric. In Teknek, the court noted that the pool of money from which the creditor sought recovery was *the same* pool of money at issue in the bankruptcy case but that the creditor's alter ego claim could nonetheless go forward. Id. at 649-50. This does not support the proposition that the separateness or sameness of the pool is dispositive of the question.  Rather, in this instance, just as in Teknek, whether Lincoln Electric's claim is personal or general depends upon the nature of the injury. And the injury that allegedly resulted from the conspiracy is identical to the injury in Lincoln Electric's other claims: the inability to collect its $284,600.00 judgment. Although Lincoln Electric surely feels a sting from its

11

unsatisfied judgment, it is a sting that is common to the debtor MPM and all of its creditors.[1]

In any event, even if the civil conspiracy claim were personal to Lincoln Electric, the claim could not go forward because an attorney cannot, as a matter of law, conspire with his client when acting within the bounds of the attorney-client relationship. Doherty v. American Motors Corp.,728 F.2d 334, 340 (6th Cir.1984); but see Deutsche Bank Nat'l Trust v. Gillium, 151 Ohio Misc.2d 36, 41, 907 N.E.2d 809, 2009 Ohio 2394 (Ohio C.P.2009) ("a civil-conspiracy action [may go] forward that is predicated upon acts that extend beyond the attorney-client relationship"). Lincoln Electric has stated no facts from which it might reasonably be inferred that Mr. Green's actions took place outside the professional relationship. Further, under the intra-corporate conspiracy doctrine, a corporation cannot conspire with itself, foreclosing Lincoln Electric's civil conspiracy claim against Mr. Manahan and MP Machinery & Testing. See Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 776-77, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) (parent and subsidiary cannot conspire with each other); Tiftarea Shopper, Inc. v. Georgia Shopper, Inc., 786 F.2d 1115, 1117 (11th Cir.1986) (agents of a corporation cannot conspire with corporation).

---

[1] In Teknek, the court noted that the creditor was in fact the debtor's only major creditor. See In re Teknek, 563 F.3d at 650. As a consequence, allowing it to settle its claim outside of bankruptcy would not have an effect on the larger class of creditors. Id. In the present case, Lincoln Electric states that it is MPM's only legitimate creditor. It argues that this Court, like the court in Teknek, should allow its claim to proceed for the same reasons. This argument is without merit. First, Teknek's observation that a larger class of creditors would not be affected was dicta. Second, while Lincoln Electric has alleged facts from which it might be concluded that Mr. Manahan is not a legitimate creditor, this remains to be proven.

Lincoln Electric further argues that its injury is unique from other creditors, because it incurred legal fees and other expenses above and beyond the judgment itself. Lincoln Electric maintains that it may pursue these separate and unique damages under the Ohio Uniform Fraudulent Transfer Act. Under the Act, a creditor may be entitled to different forms of relief, one of which is "any other relief that the circumstances may require." Ohio Rev. Code Ann. § 1336.07(A)(3)(c). Lincoln Electric argues that this category of relief includes compensatory damages, attorney's fees, and punitive damages.

Although the Court does not disagree that compensatory damages, attorney's fees, and punitive damages may be recovered under the Ohio Fraudulent Transfer Act, it is clear that their recovery is dependent upon proving, primarily, the fraudulent transfer. That is, "[i]n order to recover punitive damages, a creditor must not only establish the underlying cause of action for the fraudulent transfer, but must also prove that the debtor acted with actual malice when making the fraudulent transfer." Blood v. Nofzinger  162 Ohio App.3d 545, 563-564, 834 N.E.2d 358, 372 (Ohio Ct. App. 2005). Further, "an award of attorney fees is dependent upon a finding of malice and the award of punitive damages." Sanderson Farms, Inc. v. Gasbarro, 2004 WL 583849, at *14 (Ohio Ct. App. 2004)(abrogated on other grounds). In the present case, MPM's bankruptcy has forced the fraudulent transfer claim off the table. As a consequence, Lincoln Electric cannot independently sustain a claim for fees and punitive damages. See In re Central Heating & Air Conditioning, Inc., 64 B.R. 733 (N.D.Ohio1986) ("Punitive damages and attorneys' fees will not be awarded absent compensatory damages for a fraudulent conveyance").

13

In sum, Lincoln Electric has stated no injury specific to it that would allow this matter to proceed outside bankruptcy. No matter how its claims are pleaded, Lincoln Electric's complaint rests on injuries that are common to the debtor and the debtor's creditors. The Bankruptcy Code was designed to prevent a suit of this nature.

### III. Conclusion

For the foregoing reasons, the defendants' motions to dismiss are granted.

IT IS SO ORDERED.

                                                    /s/ Lesley Wells
                                       UNITED STATES DISTRICT JUDGE

Date: 11 August 2011